THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           No. 1:19-cr-930 JCH

ALBERT VALLEJOS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant moves to suppress gun and other evidence law enforcement officers found in the vehicle he was driving, arguing that officers conducted a pretextual inventory search in violation of the Fourth Amendment. The Court held a hearing on the motion on October 22, 2019. After carefully considering the motion, briefs, evidence and relevant law, the Court denies the motion.

**I.**     **FACTUAL BACKGROUND**

On February 13, 2019, officers had a warrant in hand for Defendant's arrest for a January 2019 shooting during which Defendant allegedly shot four rounds at a person named "F.C." Suppression Hearing Motion Transcript, 12:20-22; 14:1-8; 25:11-13 (Mot. Hr.'g Tr.). Officers stopped Defendant as he was driving a car registered to his mother.[1] *Id*. 3:24-25; 49:12-25. Defendant pulled the vehicle over next to the entrance of the UNM Cancer Center in Albuquerque

---

[1] In its response brief, the Government initially questioned whether Defendant had standing to challenge the search of the vehicle given that he was not its registered owner. But at the suppression hearing the Government stipulated that Defendant's mother gave him permission to drive her vehicle on the day in question and withdrew its standing argument. Pursuant to the parties' stipulation, the Court proceeds on the assumption that Defendant has standing to challenge the search of the vehicle he drove.

and in front of the fire lane and main entrance. *Id*. 49:22-25; 50:1-7. He was arrested on the spot without incident. *Id*. 50:11-12.

As Defendant stood handcuffed outside of the vehicle he drove, officers peered into the vehicle's driver's side window. Def.'s Ex. A. At some point, Detective Koury Church began an on-the-scene inventory search of the vehicle. Def.'s Ex. B. He opened the driver's door, looked under the driver's seat, and saw a gun. *Id*.; Mot. Hr'g. Tr. 57:11-19. Church then stopped the inventory and asked his colleague, Detective Donald Piatt, for guidance on how to proceed. *Id*. 58:7-12. Following Piatt's recommendation, Church sealed the vehicle and towed it in preparation of a warrant to later search the car. *Id*. 58:12-14. Officers did not remove any items from the car at that time, except possibly the keys. *Id*. 58:25 – 59:1. Nor did they produce an inventory list. *Id*. 58:17-19.

The next day, on February 14, 2019, Detective Piatt obtained a warrant to search the car for any firearms, ammunition, and related equipment. Govt.'s Ex. 3. Detective Piatt executed the search warrant that same day, leading to the discovery of the handgun at issue, two handgun magazines, .45 caliber bullets, and a firearm holster. *Id*.; Mot. Hr'g. Tr. 24:1-25. Piatt listed these items on the search warrant return and inventory, which the Government introduced into the evidentiary record. Govt.'s Ex. 3.

Defendant challenges the seizure of the gun and gun-related evidence, saying that the first search of his mother's car did not qualify as an inventory search because officers: (1) undertook the search without following standardized criteria; (2) did not produce an inventory; and (3) decided to impound the truck only after seeing the gun, suggesting that they were motivated to find criminal evidence. At the suppression hearing, Defendant argued for the first time that a tow

of the vehicle could have been avoided, but that police officers purposely arrested Defendant in a public place, knowing that they impound and inventory the vehicle without a warrant.

## II. FOURTH AMENDMENT OVERVIEW

The Fourth Amendment provides in relevant part: "The right of the people to be secure … against unreasonable searches and seizures." U.S. Const. amend. IV. In general, law enforcement officers must obtain a warrant supported by probable cause before conducting a search or seizure. *See Kentucky v. King*, 563 U.S. 452, 459 (2011). One exception to the warrant requirement is for inventory searches of lawfully seized automobiles. *See Illinois v. Lafayette,* 462 U.S. 640, 643 (1983). An inventory search of a lawfully impounded automobile is reasonable even if it is conducted without a warrant and in the absence of probable cause to believe that criminal evidence will be discovered. *See South Dakota v. Opperman*, 428 U.S. 364 (1976); *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) ("inventory searches need not be supported by a warrant or probable cause."). "It is common practice for the police to conduct an inventory of the contents of vehicles they have taken into their custody or are about to impound." *Id*. (citation and quotation marks omitted).

However, if the administrative search is merely a pretext for a criminal investigation then evidence found during an inventory may be inadmissible. There are two criteria for inventory searches to be reasonable under the Fourth Amendment. *See Tueller*, 349 F.3d at 1243. First, such searches "are reasonable only if conducted according to standardized procedures." *Id*. Second "[t]he policy or practice governing inventory searches should be designed to produce an inventory, [] in other words, an inventory search must be justified by the administrative purposes of such searches." *Id*. (citations and quotation marks omitted). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. (quoting *Florida v.*

*Wells,* 495 U.S. 1, 4 (1990)). The government carries the burden of demonstrating reasonableness. *See United States v. Taylor*, 592 F.3d 1104, 1107 (10th Cir. 2010); *see also United States v. Sanders*, 796 F.3d 1241, 1244 (10th Cir. 2015) ("The government bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment."). If "searching agents act in bad faith or solely for the purpose of investigation … [t]he fruit of the evidence, however, will be suppressed." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997).

## III. DISCUSSION

### A. Lawfulness of the Inventory Search

Officers acted according to the Albuquerque Police Department's towing and impoundment policy, which the Government introduced into the evidentiary record. That policy required the impoundment of Defendant's mother's vehicle because a vehicle "will" be towed when "[t]he driver has been … arrested." Albuquerque Police Department Procedural Orders, Towing and Wrecker Services, § 2-48-2(B)(1), ECF No. 23-2 ("SOP"). It is undisputed that Defendant was lawfully arrested on a warrant when officers peered through the car window and later looked under the driver's seat. Second, under Supreme Court precedent, officers could impound the vehicle because it was located in a public lot, in front of a fire lane and near the entrance and exit to a medical center. *See Opperman*, 428 U.S. at 369 (the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.")

At the suppression hearing, Defendant argued for the first time that officers purposely waited to arrest Defendant in public to skirt APD's policy prohibiting tows of vehicles at the driver's residence or registered address. *See* SOP § 2-48-2(B)(1) ("[o]fficers will not tow if the vehicle is parked at the driver's place of residence, or his/her registered address.") Officers could

4

have arrested Defendant in an apartment complex where they began their surveillance of him, Defendant says. Instead, they covertly followed him to yet another apartment complex where they also could have arrested him. Despite these two clear opportunities, officers waited to arrest him in public to avoid complying with the SOP described above. This, Defendant says, is evidence of pretext.

The problem with Defendant's argument is that he advanced no legal authority that the Fourth Amendment requires police to execute an arrest warrant on a suspect in a way that avoids impoundment and inventory.

Next, to the extent that Defendant argues that the decision to tow the car was unreasonable because officers did not contact a third-person to take custody of it, this too is not required under the Fourth Amendment. *See United States v. Andras-Gallardo*, 3 Fed. Appx. 959, 963 (10th Cir. 2001) ("the fact that alternatives to impoundment may have existed does not mean impoundment was per se unreasonable.") (citing *Colorado v. Bertine,* 479 U.S. at 374) (holding that the police need not give a motorist "an opportunity to make alternative arrangements" that avoid impoundment and inventory)). In summary, officers impounded and searched the car according to police standardized criteria and permissibly moved it from a public lot.

The second reasonableness factor looks at whether the APD's policies accomplished an inventory. The SOPs required officers to inventory search the vehicle "at or near the time the vehicle was lawfully placed within police custody," SOP § 2-71-3(d)(1)(d). Defendant argues that officers' on-the-scene search was a general rummaging because Detective Church supposedly zeroed-in on the gun and then did not list it on an evidence form. Detective Piatt then relied on the illegally discovered gun, Defendant says, in his later search warrant affidavit in support of the second search of the vehicle.

5

These arguments do not carry the day. The inventory was not pretextual just because Detective Church did not immediately list the gun evidence. The relevant SOP directed Detective Church to search the car "at or near the time the vehicle" came into his custody. SOP § 2-71-3(d)(1)(d). Following that directive, Detective Church located the gun under the driver's seat. He could have lawfully continued on with his search since SOP § 2-71-3(d)(1)(d) required the search of the entire passenger compartment. But he chose instead to stop the inventory and get a search warrant. Detective Piatt then inventoried the items the next day. The Court cannot say that Detective Church's deviation from APD's written policy by not listing the gun (if this even was a deviation), rendered the inventory search unconstitutional, especially since the SOP allowed police to inventory the vehicle "at or near the time" it was taken into custody and Detective Piatt produced an inventory the next day. *See Taylor*, 592 F.3d at 1108 (inventory search was not pretextual where the original inventorying officer did not complete the inventory, but instead handed over the investigation to the FBI, and the FBI completed the inventory).

This case therefore resembles *United States v. Mayfield*, 161 F.3d 1143 (8th Cir. 1998), where troopers arrested the defendant and then inventoried the vehicle he was driving in preparation of its towing, leading to drugs, currency and gun evidence. *Id*. at 1144. The officer conducting the inventory did not complete the inventory form, but a few days after the car was towed, an officer prepared an inventory of the items that had been seized from the car. *Id*. In rejecting the defendant's challenge to the validity of the search, the Eighth Circuit observed that "[c]ompliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function," and that "[t]his does not mean that inventory searches are always unreasonable when standard procedures are not followed, however." *Id*. at 1145. (citations and quotation marks omitted). As relevant here, the Eight Circuit held that the inventory search

was reasonable where the search was conducted pursuant to established procedure, the seized items were listed on a later completed evidence form, and the inventory search was not a pretext for a general search for incriminating evidence. *Id*. In summary, the circumstances do not suggest that officers were conducting a pretextual inventory search and officers lawfully impounded and inventoried the vehicle.

**B. Inevitable Discovery**

In its response brief, the Government argues that all of the incriminating evidence against Defendant would have been inevitably discovered. "The inevitable discovery doctrine provides an exception to the exclusionary rule, and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005). "Those lawful means include an inventory search." *Tueller*, 349 F.3d at 1243. "The government has the burden of proving by a preponderance of the evidence that the evidence in question would have been discovered in the absence of the Fourth Amendment violation." *United States v. Souza*, 223 F.3d 1197, 1203 (10th Cir. 2000).

The Tenth Circuit has "repeatedly applied the inevitable discovery doctrine to evidence produced by an improper inventory search where the search was preceded by a lawful impoundment." *United States v. Andas-Gallardo*, 3 Fed. App'x 959, 964 (10th Cir. 2001) (citing *Haro-Salcedo,* 107 F.3d at 773-74 and *United States v. Horn,* 970 F.2d 728, 732 (10th Cir. 1992)). Thus, in *Haro-Salcedo*, the Tenth Circuit held that notwithstanding the officer's illegal inventory search of a vehicle, cocaine evidence would have been inevitably discovered following the defendant's arrest and impoundment because city police department policy mandated an inventory search. *See also Horn*, 970 F.2d at 732 ("Even assuming arguendo that the post-arrest search beside the highway was improper and should have been conducted in a different manner, … it was

7

inevitable that the weapons would have been discovered and that defendant would have been charged with their possession."); *see also United States v. Sitlington*, 527 Fed. App'x 788, 792 (10th Cir. 2013). As noted earlier, APD policy mandated the impoundment of a vehicle when its driver had been arrested. The same policy required an inventory of the impounded vehicle. Officers inevitably would have discovered the gun and other gun-related evidence, and Defendant would have been charged with their possession. *See Horn*, 970 F.2d at 732.

**C. Automobile Exception to the Warrant Requirement**

In its response brief, the Government additionally argues that the so-called "automobile exception" justified the first search during which the firearm was discovered. Pursuant to that exception, a vehicle may be searched without a warrant if there is probable cause. *See Carroll v. United States*, 267 U.S. 132, 158-59 (1925) (creating the exception); *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas,* 458 U.S. 259, 261 (1982) (per curiam). "In determining whether probable cause exists, an officer 'may draw inferences based on his own experience.'" *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002) (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)).

At the time officers encountered Defendant, they had a warrant for his arrest but not to search the car that he drove. But officers had probable cause to believe that the vehicle contained a gun and were permitted to warrantlessly search the car for such contraband. Officers were

arresting Defendant because F.C. claimed that Defendant shot at him as Defendant sat in the passenger side of a car. Mot. Hr'g Tr. 14:5-8. Bullet casings and gun-shot marks discovered on the scene corroborated F.C.'s side of the story, and F.C. told Detective Piatt that Defendant might have had a history involving guns. *Id*. 14:14-22; 16:18-22. Detective Piatt's search of Defendant's criminal history showed felony convictions, all involving guns, and Detective Piatt told Detective Church that Defendant was involved in a shooting. *Id*. 20:1-7; 42:12-17. These facts were sufficient to give Detective Church probable cause to believe that a gun was in the vehicle Defendant drove. Therefore, the Court upholds the search on the additional ground of the automobile exception to the Fourth Amendment's warrant requirement.

**IT IS THEREFORE ORDERED that** Defendant's Motion to Suppress Tangible Evidence **[ECF No. 19]** is **DENIED**.

**IT IS SO ORDERED**.

_____
JUDITH C. HERRERA
SENIOR. U.S. DISTRICT JUDGE